IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | | |
|---|---|---|
| JAMIE BIGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHAMPAIGN COMMUNITY UNIT SCHOOL | ) | |
| DISTRICT # 4; UNIT # 4 SCHOOL BOARD | ) | |
| OF EDUCATION; CHAMPAIGN COMMUNITY | ) | No.: |
| UNIT SCHOOL DISTRICT # 4 FAMILY | ) | |
| INFORMATION CENTER; ARTHUR R. | ) | |
| CULVER, Superintendent of Champaign | ) | |
| Community Unit School District # 4, in his official | ) | |
| capacity; JOE WILLIAMS, Principal of | ) | COMPLAINT |
| Champaign Community Unit School District # 4, | ) | |
| Edison Middle School, in his official capacity; | ) | |
| DEDRICK MARTIN, Director of Equity and | ) | |
| Achievement for Champaign Community Unit | ) | |
| School District #4, in his official capacity; | ) | EQUITABLE RELIEF SOUGHT |
| DORLAND NORRIS, Deputy Superintendent of | ) | AND DEMAND FOR JURY TRIAL |
| Curriculum Design, Educational Services and | ) | |
| Equity for Champaign Community Unit School | ) | |
| District # 4, in her official capacity; GAYLE | ) | |
| GRIFFIN, an employee of Champaign Community | ) | |
| Unit School District # 4, in her official capacity; | ) | |
| JAMES HARDEN, an employee of Champaign | ) | |
| Community Unit School District # 4, in his official | ) | |
| capacity; HATTIE PAULK, Director of the Family | ) | |
| Information Center for Champaign Community | ) | |
| Unit School District # 4,  in her official capacity | ) | |
| and individually; and other AS-YET UNKNOWN | ) | |
| CHAMPAIGN COMMUNITY UNIT SCHOOL | ) | |
| DISTRICT #4 OFFICIALS AND EMPLOYEES, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

NOW COMES Plaintiff, JAMIE BIGHAM, by his attorney, ELIZABETH A. BLEAKLEY of

THE LAW OFFICE OF ELIZABETH A. BLEAKLEY, LLC, and complaining of

CHAMPAIGN COMMUNITY UNIT SCHOOL DISTRICT # 4; UNIT # 4 SCHOOL BOARD
OF EDUCATION; CHAMPAIGN COMMUNITY UNIT SCHOOL DISTRICT # 4 FAMILY
INFORMATION CENTER; ARTHUR R. CULVER, Superintendent of Champaign Community
Unit School District # 4, in his official capacity; JOE WILLIAMS, Principal of Champaign
Community Unit School District # 4, Edison Middle School, in his official capacity; DEDRICK
MARTIN, Director of Equity and Achievement for Champaign Community Unit School District
#4, in his official capacity; DORLAND NORRIS, Deputy Superintendent of Curriculum Design,
Educational Services and Equity for Champaign Community Unit School District # 4, in her
official capacity; GAYLE GRIFFIN, an employee of Champaign Community Unit School
District # 4, in her official capacity; JAMES HARDEN, an employee of Champaign Community
Unit School District # 4, in his official capacity; HATTIE PAULK, Director of the Family
Information Center, in her official capacity and Individually; and other AS-YET UNKNOWN
CHAMPAIGN COMMUNITY UNIT SCHOOL DISTRICT# 4 OFFICIALS AND
EMPLOYEES, (collectively, the "Defendant School Officials"), alleges as follows:

## **Parties**

1.  CHAMPAIGN COMMUNITY UNIT SCHOOL DISTRICT # 4 is the public school
district that covers the Champaign area.

2.  UNIT # 4 SCHOOL BOARD OF EDUCATION is the policy making body of
CHAMPAIGN COMMUNITY UNIT SCHOOL DISTRICT # 4, and is ultimately responsible
for the actions of its school officials and employees.

3.  CHAMPAIGN COMMUNITY UNIT SCHOOL DISTRICT # 4 FAMILY
INFORMATION CENTER is the department that is responsible for placing students in
appropriate schools within the school district.

4.  ARTHUR R. CULVER is the Superintendent of Champaign Community Unit School District # 4, and is responsible for the administration of the school district as a whole.

5.  JOE WILLIAMS is the Principal of Edison Middle School, a school within Champaign Community Unit School District # 4, and is responsible for the administration of Edison Middle School.

6.  DEDRICK MARTIN is the Director of Equity and Achievement for Champaign Community Unit School District #4.

7.  DORLAND NORRIS is the Deputy Superintendent of Curriculum Design, Educational Services and Equity for Champaign Community Unit School District # 4.

8.  GAYLE GRIFFIN is an employee of Champaign Community Unit School District # 4.

9.  JAMES HARDEN is an employee of Champaign Community Unit School District # 4.

10. HATTIE PAULK is the Director of the Champaign Community Unit School District # 4 Family Information Center, and is responsible for the administration of the Family Information Center.

## Jurisdiction and Venue

11. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the Fourteenth Amendment to the United States Constitution.

12. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. Venue is proper under 28 U.S.C. § 1391(b). The parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

**Factual Background**

13. At all relevant times, Mr. Jamie Bigham (Mr. Bigham) lived in Champaign, Illinois, in the Champaign Community Unit School District # 4 (Champaign).

14. Mr. Bigham is the father of his son J.B., a minor, whose birth date is 1991. At all relevant times, and pursuant to his divorce decree and parenting agreement (divorce decree), Mr. Bigham had primary physical custody of J.B.

15. At the time of the events in question, J.B. was starting eighth grade, a vital time during a child's development and education.

16. J.B. was to attend Edison Middle School (Edison), a public school in the local school district of Mr. Bigham's and J.B.'s residence. J.B. had attended Edison previously, and so was familiar with its teachers, students, and surrounding neighborhood.

17. The summer before J.B. started eighth grade, Mr. Bigham allowed J.B. to visit his mother, as allowed by the divorce decree, for a couple of months. J.B. was to return to his father's home before the commencement of the school year at Edison.

18. On or about August or September 2005, J.B.'s mother, Kenedra Hunt (J.B.'s mother) and Hattie Paulk, discussed transferring J.B. to another public school outside of the school district of J.B.'s home and legal residence with his father, Mr. Bigham.

19. Neither J.B.'s mother or Hattie Paulk told Mr. Bigham of this discussion to transfer J.B. to another school.

20. Hattie Paulk has been a friend of J.B.'s mother, Kenedra Hunt, and the Hunt family for many years.

21. Hattie Paulk had access to J.B.'s school records, which contained a copy of the divorce decree, which states that Mr. Bigham had primary physical custody of J.B.

22. Hattie Paulk had access to J.B.'s school records, which clearly recorded J.B.'s legal address as the same as Mr. Bigham's address in Champaign, Illinois.

23. On or about August or September 2005, Mr. Bigham visited Edison Middle School and spoke with the Principal, Joe Williams, regarding J.B.'s continued attendance at Edison.

24. At this same meeting, Joe Williams reviewed J.B.'s school records, including the divorce decree, and advised Mr. Bigham that J.B. had not been and would not be transferred to any other school, and that J.B.'s records clearly showed that J.B. was still attending Edison.

25. On or about August or September 2005, Dedrick Martin and Dorland Norris provided advice and consultation to Hattie Paulk and other school officials regarding J.B.'s school status and the decision to remove J.B. from Edison to a public school outside the district over Mr. Bigham's objections.

26. On or about August or September 2005, Dedrick Martin, Dorland Norris, Gayle Griffin, James Harden, and Joe Williams were involved in communications with Hattie Paulk regarding J.B.'s school placement; however, Mr. Bigham was not informed of these communications.

27. On or about August or September 2005, but after the beginning of the 2005-2006 school year, Hattie Paulk contacted Mr. Bigham and said that there was a dispute with J.B.'s mother about which public school J.B. was to attend.

28. During this same conversation, Mr. Bigham assured Hattie Paulk that there was no dispute because Mr. Bigham was the primary custodial parent, his son legally resided with him by court order, and that Mr. Bigham had no agreement with J.B.'s mother for J.B. to reside with her during the 2005-2006 school year.

29. On or about August 2005 or September 2005, but after the beginning of the 2005-2006 school year, Mr. Bigham, Hattie Paulk, and J.B.'s mother subsequently had a short meeting

during which J.B.'s parents each produced copies of the exact same divorce decree and showed the copies to Hattie Paulk.

30. During this same meeting, Mr. Bigham reiterated to Hattie Paulk and J.B.'s mother that Mr. Bigham was the parent with court-awarded primary physical custody of J.B., that J.B.'s place of residence during the school year was with his father and there was no agreement to the contrary, and that J.B. was already enrolled in the proper school, which was Edison.

31. During this same meeting, Hattie Paulk reviewed the duplicate copies of the divorce decree, which as Mr. Bigham pointed out, clearly stated that primary physical custody was with Mr. Bigham and that the child's residence was with the father.

32. During this same meeting, Hattie then asked J.B.'s mother which school she wanted J.B. to attend to which J.B.'s mother replied that she wanted J.B. to attend Urbana Middle School (Urbana).

33. During this same meeting, Hattie Paulk told Mr. Bigham, J.B.'s primary custodial parent, that she determined that J.B.'s residence was with his mother, even though J.B. was simply visiting his mother over the summer. She also told Mr. Bigham that he had no right to object to her decision regarding residency.

34. During this same meeting, Hattie Paulk told Mr. Bigham that: she had heard all she needed to hear; that under the divorce decree J.B.'s mother had the legal right to enroll J.B. in any school she chose, even over Mr. Bigham's objections; and that her decision on the matter was final.

35. Hattie Paulk, other school officials, and J.B.'s mother falsely led Mr. Bigham to believe that J.B. had been enrolled at Urbana over his objections.

36. On or about August or September 2005, despite the fact that Mr. Bigham had court-awarded primary physical custody of J.B. and had maintained such custody status since 1996, Hattie Paulk advised Mr. Bigham that he should give J.B.'s mother temporary custody. When he refused, she replied that she would have to get her own attorney involved.

37. On or about August or September 2005, an Edison school employee approached Mr. Bigham and told him that J.B.'s mother might be trying to "run with his son."

38. On or about August or September 2005, Mr. Bigham was approached by a couple of Edison school employees, who informed him that they refused to sign anything related to J.B.'s withdrawal from Edison and transfer to another school because they knew that "what's going on is wrong."

39. On or about August or September 2005, Mr. Bigham had a law enforcement officer meet him at Urbana Middle School (Urbana) in an attempt to locate J.B., however, J.B. was never actually enrolled in Urbana as Mr. Bigham was led to believe.

40. During this school visit, the law enforcement officer gave the Urbana office employees a copy of the divorce decree and advised them that if J.B.'s mother tried to enroll J.B. in Urbana Middle School the employees were to refer J.B.'s mother back to Edison Middle School because Mr. Bigham was the primary custodial parent.

41. On or about August or September 2005, Hattie Paulk approved J.B.'s transfer from Champaign to Cairo Junior/Senior High School (Cairo), a school more than three hours away from J.B.'s legal residence, and without consent, knowledge or approval from Mr. Bigham, J.B.'s primary custodial parent.

42. Mr. Bigham never requested or consented to the transfer of J.B. from Edison to Cairo; nor was he even informed of this transfer.

43. By approving J.B.'s wrongful transfer from Champaign to Cairo without Mr. Bigham's approval or knowledge, Hattie Paulk deprived Mr. Bigham of his fundamental right to direct and control his son's education.

44. By approving J.B.'s wrongful transfer from Champaign to Cairo without Mr. Bigham's approval or knowledge, Hattie Paulk deprived Mr. Bigham of his due process rights to a fair hearing and to object to J.B.'s placement at Cairo.

45. Hattie Paulk's wrongful transfer of J.B. to Cairo and her deprivation of Mr. Bigham's fundamental and due process rights was an abuse of her position as a school official.

46. Hattie Paulk knew or should have known that transferring J.B. to a school over three hours away from Mr. Bigham's residence, without Mr. Bigham's knowledge or consent, would interfere with Mr. Bigham's fundamental right to direct and control his son's education.

47. Hattie Paulk knew or should have known that wrongfully transferring J.B. to a school over three hours away from Mr. Bigham's residence, without Mr. Bigham's knowledge or consent, would interfere with Mr. Bigham's liberty and due process rights.

48. By approving J.B.'s transfer from Champaign to Cairo without Mr. Bigham's consent or knowledge, Hattie Paulk caused Mr. Bigham to feel severe emotional distress, causing or contributing to blackouts, sleep deprivation, and other stress-related medical conditions, such that he has missed a significant amount of work, with a significant loss of income.

49. Mr. Bigham never signed the Student Withdrawal Form, which requires a child's legal guardian sign before transferring a student from one school to another.  Instead, approval was given by the Family Information Center on September 19, 2005.

50. On September 19, 2005, Joe Williams approved J.B.'s transfer from Champaign to Cairo, a school more than three hours away from J.B.'s legal residence.

51. The school transfer form that Joe Williams signed listed Mr. Bigham and his current spouse as J.B.'s legal guardians, and shows Mr. Bigham's residence as being within Champaign's school district.

52. Since Mr. Bigham neither requested nor consented to J.B.'s transfer, Joe William's authorization of J.B.'s transfer was wrongful.

53. J.B. was absent from Edison on the first day of school, August 24, 2005.

54. J.B.'s documented last day of attendance at Champaign was August 31, 2005. His first day of documented attendance at Cairo was September 12, 2005. The unconsented to transfer caused J.B. to miss two weeks of school.

55. At the time J.B. was transferred from Edison to Cairo, Champaign school officials, particularly Hattie Paulk, gave no consideration to whether Cairo could accommodate J.B.'s special academic requirements.

56. On or about September or October 2005, Hattie Faulk informed Mr. Bigham in a phone call that she had no idea where J.B. was and that he should not call her anymore, and that she would call him if she heard about J.B.'s whereabouts.

57. Shortly after his phone conversation with Hattie Faulk on or about September or October 2005, Mr. Bigham found out that his son was attending Cairo and confirmed this with the Cairo's registrar, Curtis Meyers.

58. Mr. Bigham told Curtis Meyers that J.B. was illegally enrolled in Cairo without his consent, to which Curtis Meyers replied that Hattie Paulk had approved J.B.'s registration at Cairo.

59. On or about September or October 2005, Mr. Bigham had a second meeting with the Joe Williams who again reviewed J.B.'s school records and the divorce decree and then advised Mr.

Bigham that "he had no idea" how J.B. had been transferred to Cairo because the form
authorizing the transfer was missing the required signature.

60. On or about September or October 2005, Mr. Bigham visited Cairo to bring J.B. home.

61. During this visit to Cairo, Mr. Bigham showed Cairo's Principal a copy of his divorce
decree. Cairo's Principal called Cairo's Superintendent and these two school officials determined
that J.B. should not be enrolled in Cairo, but should be returned to Edison under Mr. Bigham's
care as the parent with court-awarded primary physical custody of J.B.

62. During this visit to Cairo, a Cairo employee contacted J.B.'s mother and advised her that
Cairo was releasing J.B. and his school records to Mr. Bigham.

63. On or about October 31, 2005, Mr. Bigham filled out the School Student Registration
form, requesting that his son be transferred back to Edison from Cairo, so his son could attend
the school in his home district.

64. On November 2, 2005, Cairo approved J.B.'s transfer back to Edison, the school in his
home district.

65. Immediately following this visit, Mr. Bigham and J.B. returned to their place of residence
in Champaign.

66. On or about September or October, 2005, Hattie Paulk told Mr. Bigham that he should
get on his knees and beg for forgiveness from God because of the negative feelings she said Mr.
Bigham had toward J.B.'s mother for disappearing with his son, J.B.

## Count I -- 42 U.S.C. § 1983

**Due Process Clause of the Fourteenth Amendment to the United States Constitution**

**(Procedural Due Process)**

67. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

68. As more fully described above, all of the Defendants, while acting under color of state law and within the scope of their employment, deprived Mr. Bigham of his constitutional right to procedural due process under the Fourteenth Amendment.

69. Hattie Paulk, as the Director of the Family Information Center, is an authorized decision maker for Champaign Community Unit School District # 4, and is responsible for executing policies made by the School Board for the School District.

70. Since Hattie Paulk has final decision-making authority, her actions establish the existence of a school board policy.

71. Parents have a fundamental liberty interest in the care, control, and education of their children, giving parents heightened protections against governmental interference in those spheres.

72. Hattie Paulk gave Mr. Bigham no form of hearing whatsoever, or in any event gave him no fair hearing and no right or avenue of appeal, regarding her decision to transfer his son J.B. to another school against Mr. Bigham's objections.

73. Since no hearing, or no fair hearing and no right or avenue of appeal, was afforded to Mr. Bigham, there was insufficient due process to insure that the transfer decision made by Hattie Paulk was not arbitrary, unjustified, biased, or discriminatory.

74. Hattie Paulk's transfer of J.B. to a school district over three hours away from Mr. Bigham effectively and intentionally deprived Mr. Bigham of his liberty interests in the care, control, and

education of his child.

75. By her actions, Hattie Paulk caused J.B. to be removed from Mr. Bigham's home so J.B. could attend the school to which he had been wrongfully transferred.

76. Normally, the state must find a parent unfit before engaging in such a high level of interference with a parent's interests in the care, control, and education of their children, and no such finding has been made against Mr. Bigham.

77. As a result of this violation of Mr. Bigham's constitutional right to procedural due process, Mr. Bigham suffered injuries, including but not limited to, severe emotional distress, the removal of his son from his home, and expenses related to resolving J.B.'s school attendance at an improper school.

78. The deprivation of Mr. Bigham's procedural due process rights was objectively unreasonable and was undertaken intentionally with malice and willful indifference to Mr. Bigham's constitutional rights.

WHEREFORE, Mr. Bigham respectfully requests that the court:

a.      Enter a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. Pro. 57, declaring that Defendant School Officials deprived Plaintiff Mr. Bigham of a liberty interest without due process of law, as provided by the Fourteenth Amendment of the United States Constitution.

b.      Award to Plaintiff Mr. Bigham the amount of $75,000 for lost wages, costs associated with placing his son back in the appropriate school, and for medical expenses incurred.

c.      Award compensatory and punitive damages to Plaintiff Mr. Bigham who has suffered a loss and deprivation of his constitutional rights.

    d.      Award costs of this action to Plaintiff Mr. Bigham.

    e.      Award a reasonable attorney's fee to Plaintiff Mr. Bigham, as provided by 42 U.S.C. § 1988.

    f.      Grant such additional relief to Plaintiff Mr. Bigham as the Court deems just and proper.

**<u>Count II -- 42 U.S.C. § 1983</u>**

**Due Process Clause of the Fourteenth Amendment to the United States Constitution**

**(Substantive Due Process)**

79. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

80. As more fully described above, all of the Defendants, while acting under color of state law and within the scope of their employment, deprived Mr. Bigham of his constitutional right to substantive due process.

81. Hattie Paulk, as the Director of the Family Information Center, is an authorized decision maker for Champaign Community Unit School District # 4, and is responsible for executing policies made by the School Board for the School District.

82. Since Hattie Paulk has final decision-making authority, her actions establish the existence of a school board policy.

83. Parents have a fundamental liberty interest in the care, control, and education of their children, giving parents heightened protections against governmental interference in those spheres.

84. Hattie Paulk intentionally deprived Mr. Bigham of his constitutional rights to substantive due process by wrongfully transferring J.B. to Cairo despite Mr. Bigham's protests, and by misleading Mr. Bigham as to his son's placement.

85. Hattie Paulk intended to injure Mr. Bigham by depriving him of his constitutional rights to substantive due process by wrongfully transferring J.B. to Cairo despite Mr. Bigham's protests, and by misleading Mr. Bigham of his son's placement.

86. Normally, the state must find a parent unfit before engaging in such a high level of interference with a parent's interests in the care, control, and education of their children, and no such finding has been made against Mr. Bigham.

87. As a result of this violation of Mr. Bigham's constitutional right to substantive due process, Mr. Bigham suffered injuries, including but not limited to, severe emotional distress, the removal of his son from his home, and expenses related to resolving J.B.'s school attendance at an improper school.

88. The deprivation of Mr. Bigham's substantive due process rights was objectively unreasonable and was undertaken intentionally with malice and willful indifference to Mr. Bigham's constitutional rights.

WHEREFORE, Mr. Bigham respectfully requests that the court:

a.      Enter a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. Pro. 57, declaring that Defendant School Officials deprived Plaintiff Mr. Bigham of a liberty interest without due process of law, as provided by the Fourteenth Amendment of the United States Constitution.

b.      Award to Plaintiff Mr. Bigham the amount of $75,000 for lost wages, costs associated with placing his son back in the appropriate school, and for medical expenses incurred.

c.      Award compensatory and punitive damages to Plaintiff Mr. Bigham who has suffered a loss and deprivation of his constitutional rights.

d.    Award costs of this action to Plaintiff Mr. Bigham.

e.    Award a reasonable attorney's fee to Plaintiff Mr. Bigham, as provided by 42 U.S.C. § 1988.

f.    Grant such additional relief to Plaintiff Mr. Bigham as the Court deems just and proper.

### Count III -- 42 U.S.C. § 1983

**Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**

89. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

90. As more fully described above, all of the Defendant School Officials, while acting under color of state law and within the scope of their employment, deprived Mr. Bigham of his constitutional right to equal protection.

91. Hattie Paulk, as the Director of the Family Information Center, is an authorized decision maker for Champaign Community Unit School District # 4, and is responsible for executing policies made by the School Board for the School District.

92. Since Hattie Paulk has final decision-making authority, her actions establish the existence of a school board policy.

93. In Illinois, public school attendance is based on the residence of the parent with physical custody of the child, whether or not the parent is male or female.

94. Hattie Paulk wrongfully transferred J.B. to Cairo solely because of the request of J.B.'s mother, despite the fact that Mr. Bigham had primary physical custody of J.B.

95. Hattie Paulk refused to even consider Mr. Bigham's protests against J.B. being removed to a school over three hours away from Mr. Bigham's home, thereby depriving Mr. Bigham of equal protection under the law.

96. Hattie Paulk discriminated against Mr. Bigham as a father, and favored J.B.'s mother solely based on her gender, by her actions that were motivated solely by spite, and a preference of mother' rights over father's rights, for reasons wholly unrelated to any legitimate state objective.

97. Hattie Paulk intentionally deprived Mr. Bigham of his constitutional rights to equal protection by wrongfully transferring J.B. to Cairo despite Mr. Bigham's protests, and by misleading him as to the placement of his son.

98. Hattie Paulk intended to injure Mr. Bigham by depriving him of his constitutional rights to equal protection by wrongfully transferring J.B. to Cairo despite Mr. Bigham's protests, and by misleading him as to the placement of his son.

99. As a result of this violation of Mr. Bigham's constitutional right to equal protection, Mr. Bigham suffered injuries, including but not limited to, severe emotional distress, the removal of his son from his home, and expenses related to resolving J.B.'s school attendance at an improper school.

100. The deprivation of Mr. Bigham's equal protection rights was objectively unreasonable and was undertaken intentionally with malice and willful indifference to Mr. Bigham's constitutional rights.

WHEREFORE, Mr. Bigham respectfully requests that the court:

    a. Enter a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. Pro. 57, declaring that Defendant School Officials deprived Plaintiff Mr. Bigham of a liberty interest without due process of law, as provided by the Fourteenth Amendment of the United States Constitution.

b. Enjoin Defendant School Officials from further acts of discrimination based on gender preference for a mother's constitutional rights over a father's constitutional rights.

c. Award to Plaintiff Mr. Bigham the amount of $75,000 for lost wages, costs associated with placing his son back in the appropriate school, and for medical expenses incurred.

d. Award compensatory and punitive damages to Plaintiff Mr. Bigham who has suffered a loss and deprivation of his constitutional rights.

e. Award costs of this action to Plaintiff Mr. Bigham.

f. Award a reasonable attorney's fee to Plaintiff Mr. Bigham, as provided by 42 U.S.C. § 1988.

g. Grant such additional relief to Plaintiff Mr. Bigham as the Court deems just and proper.

## Count IV -- 42 U.S.C. § 1983

### Conspiracy to Deprive Constitutional Rights – 42 U.S.C. § 1985(3)

101. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

102. The Defendant School Officials reached an agreement amongst themselves to withdraw J.B. from Edison and to transfer J.B. to another school and to thereby deprive Mr. Bigham, J.B.'s father, of his constitutional rights under the Fourteenth Amendment, all as described in the various Paragraphs of this Complaint.

103. The Defendant School Officials, acting in concert with other unknown co-conspirators, including persons who are not members or employees of the Champaign School

District or Champaign School Board, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

104.     In furtherance of the conspiracy, Hattie Paulk and other Defendant School Official co-conspirators committed overt acts and were otherwise willful participants in joint activity.

105.     As a direct and proximate result of the illicit prior agreement referenced above, Mr. Bigham's constitutional rights, as a father and the parent with court awarded primary physical custody of J.B., were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

106.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Mr. Bigham and of fathers generally.

107.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the School Board and School District in the manner described more fully in preceding paragraphs, and was ratified by Hattie Paulk, as a decision maker for School Board with final policymaking authority.

WHEREFORE, Mr. Bigham respectfully requests that the court:

a.     Enter a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. Pro. 57, declaring that Defendant School Officials deprived Plaintiff Mr. Bigham of a liberty interest without due process of law, as provided by the Fourteenth Amendment of the United States Constitution.

b.     Award to Plaintiff Mr. Bigham the amount of $75,000 for lost wages, costs associated with placing his son back in the appropriate school, and for medical expenses incurred.

c.      Award compensatory and punitive damages to Plaintiff Mr. Bigham who has

suffered a loss and deprivation of his constitutional rights.

d.      Award costs of this action to Plaintiff Mr. Bigham.

e.      Award a reasonable attorney's fee to Plaintiff Mr. Bigham, as provided by 42

U.S.C. § 1988.

f.      Grant such additional relief to Plaintiff Mr. Bigham as the Court deems just and

proper.

## Count V -- State Law Claim

### Civil Conspiracy

108.      Each of the Paragraphs of this Complaint is incorporated as if restated fully

herein.

109.      As described more fully in the preceding paragraphs, Defendant School Officials,

acting in concert with other known and unknown co-conspirators, conspired by concerted action

to accomplish by both lawful and unlawful means the unlawful purpose of depriving Mr. Bigham

of his constitutional liberty interest in the care, custody, and education of J.B., his son.

110.      In furtherance of the conspiracy, Hattie Paulk and other Defendant School

Officials committed one or more unlawful overt acts and were otherwise willful participants in

joint activity.

111.      The overt act or acts were done pursuant to and in furtherance of the common

scheme to deprive Mr. Bigham of his constitutional rights and his liberty interest in the care,

custody, and education of J.B., his son.

112.      Each of the Defendant School Officials knowingly and voluntarily participated in

the common conspiratorial scheme, understood the general objectives of the conspiratorial

scheme, accepted those objectives, and agreed, either explicitly or implicitly, to do his, her, or its part to further those objectives.

113.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the constitutional rights of Mr. Bigham.

114.    As a proximate result of Defendant School Officials' conspiracy, Mr. Bigham suffered injuries of a personal and pecuniary nature, including severe emotional distress and anguish, as is more fully described above.

WHEREFORE, Plaintiff Mr. Bigham demands judgment against Defendants for a sum in excess of the jurisdictional limit of this court.  Additionally, Plaintiff Mr. Bigham demands punitive damages against Defendant Hattie Paulk in her individual capacity.

## Count VI -- State Law Claim

### Intentional Infliction of Emotional Distress

115.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

116.    The acts and conduct of Hattie Paulk as set forth above were extreme and outrageous, as she took it upon herself without any good cause or justification, to effectively remove J.B. from his father's custody and care by transferring him to a school over three hours away.

117.    The acts and conduct of Hattie Paulk as set forth above were extreme and outrageous, as she abused her position as a school official by taking it upon herself, without any good cause or justification, to effectively remove J.B. from his father's custody and care by transferring him to a school over three hours away, and by misleading him about the placement of his son.

118.      Hattie Paulk intended to cause, or acted in reckless disregard of the probability that her conduct would cause, severe emotional distress to Mr. Bigham as a father.

119.      Said actions and conduct did directly and proximately cause severe emotional distress to Mr. Bigham, and thereby constituted intentional infliction of emotional distress.

120.      The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

121.      As a proximate result of Hattie Paulk's wrongful acts, Mr. Bigham suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

WHEREFORE, Plaintiff Mr. Bigham demands judgment against Defendants for a sum in excess of the jurisdictional limit of this court.  Additionally, Plaintiff Mr. Bigham demands punitive damages against Defendant Hattie Paulk in her individual capacity.

## Count VII -- State Law Claim

### Negligent Infliction of Emotional Distress

122.      Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

123.      Hattie Paulk owed Mr. Bigham as a parent a duty to fairly evaluate his request, as the parent with primary physical custody of J.B., not to transfer J.B. to another school.

124.      Hattie Paulk had a duty to Mr. Bigham as a parent to keep his son Jaime in a school that was in his home district, where Mr. Bigham and J.B. resided.

125.      Hattie Paulk had a duty to not mislead Mr. Bigham about the placement of his son.

126.      Hattie Paulk breached her duty to Mr. Bigham by ignoring the court order giving him primary physical custody of J.B., then transferring him to a school over three hours away.

127.    Hattie Paulk breached her duty to Mr. Bigham by ignoring school requirements that Mr. Bigham, as the parent with primary physical custody, must give his consent to any school transfer of his son.

128.    Hattie Paulk breached her duty by misleading Mr. Bigham about the placement of his son.

129.    By ignoring school records that clearly showed Mr. Bigham had primary physical custody of J.B., transferring J.B. to a school far outside the school district where Mr. Bigham and J.B. resided - despite Mr. Bigham's objections, and misleading Mr. Bigham about the placement of his son, Hattie Paulk negligently caused severe emotional distress to Mr. Bigham as a father.

130.    Said actions and conduct did directly and proximately cause severe emotional distress to Mr. Bigham, and thereby constituted negligent infliction of emotional distress.

131.    As a proximate result of Hattie Paulk's wrongful and negligent acts, Mr. Bigham suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

WHEREFORE, Plaintiff Mr. Bigham demands judgment against Defendants for a sum in excess of the jurisdictional limit of this court.

### Count VIII - State Law Claim

### Respondeat Superior

132.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

133.    In committing the acts alleged in the preceding paragraphs, Hattie Paulk as an authorized decision maker and agent of the Champaign Community Unit School District # 4, acting at all relevant times within the scope of her employment and under color of law.

134.       Defendants Champaign Community Unit School District # 4, Unit # 4 School Board of Education, Champaign Community Unit School District # 4 Family Information Center, Arthur R. Culver, Superintendent of Champaign Community Unit School District # 4, in his official capacity and Joe Williams, Principal of Champaign Community Unit School District # 4, Edison Middle School, in his official capacity, are liable as principals for all torts committed by their agents.

WHEREFORE, Plaintiff Mr. Bigham demands judgment against Defendants for a sum in excess of the jurisdictional limit of this court.

## Count IX - State Law Claim

### Indemnification

135.       Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

136.       Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

137.       Defendant Hattie Paulk, who acted within the scope of her employment in committing the misconduct described herein, is an employee of Champaign Community Unit School District # 4, Unit # 4 School Board of Education, Champaign Community Unit School District # 4 Family Information Center, Arthur R. Culver, and Joe Williams.

## **JURY DEMAND**

Plaintiff, Mr. BIGHAM, hereby demands a trial by jury pursuant to Federal Rule of Civil

Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:


s/Elizabeth A. Bleakley
Elizabeth A. Bleakley Bar Number: IL6285765
Attorney for Plaintiff
The Law Office of
Elizabeth A. Bleakley, LLC
70 West Madison
Suite 1400
Chicago, Illinois 60602
Telephone: (312) 214-3171
Fax: (312) 214-3110
E-mail: elizabeth@bleakleylawoffice.com

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff    Champaign
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Champaign
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Elizabeth A. Bleakley, The Law Office of Elizabeth A. Bleakley, LLC, 70 West Madison, Suite 1400, Chicago, IL 60602 (312) 214-3171

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt. Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☒ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | Appeal to District |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 1985(3); Due Process & Equal Protection Clauses of the 14th Amendment of the U.S. Constitution

Brief description of cause:
Deprivation of constitutional liberty rights in the care, custody, and education of Plaintiff's son

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ compensatory
and punitive damages

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
08/22/2006

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**     Example:     U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.